# Appendix D — Text of Selected Federal Trade Commission Informal Staff Opinion Letters With FCRA Sectional Index

> **Letters prior to May 4, 1990 can be found on the CD-Rom accompanying this volume.**

This Appendix contains the text of most of the significant FTC informal staff opinion letters which discuss the Fair Credit Reporting Act. These letters were written by Federal Trade Commission staff in response to written inquiries from consumer reporting agencies, creditors and other users of consumer reports and consumers. The majority of the letters are arranged chronologically by author. However, in an effort to distinguish the post-1996 amendment letters, the post-1996 letters are arranged chronologically by author, noting the recipient. The sectional index contains all of the post-1996 amendment letters. The letters are informal; they are not approved by the FTC Commissioners and they are not formal advisory opinions. They are not even interpretations of an FTC regulation, but of the statute itself. As such, they are not entitled to formal deference by a court of law. Nevertheless, the Federal Trade Commission is the primary federal enforcement agency under the Fair Credit Reporting Act, 15 U.S.C. § 1681. Thus, the letters may be viewed as persuasive, but not binding, by the courts.

The staff opinion letters and the FTC Official Staff Commentary, reprinted at Appendix C, *supra*, are related. The Official Staff Commentary is also not a rule or regulation, does not have the force or effect of a statute, and is not necessarily entitled to judicial deference. The weight accorded the Commentary by the courts will depend on the circumstances. *See* the introduction to Appendix C, *supra*. Unlike staff opinion letters, however, the Commentary has been promulgated by the Commission itself and is an official Commission document. In the event of a conflict between the Commentary and informal staff opinion letters, the Commentary should normally prevail. The letters often contain a degree of analysis and discussion missing from the Commentary. Usually the letters will buttress the conclusions of the Commentary, but sometimes they will persuasively support contrary interpretation. The text of the manual is heavily annotated with references to the letters.

Informal staff opinion letters written before May 4, 1990 are superseded by the Commentary.[1] Nevertheless, these earlier letters may still be found to be persuasive and are recommended as a valuable source to anyone considering the scope and applicability of the Act to particular circumstances; these letters can be found on the CD-Rom accompanying this volume. Letters written after the Commentary was published in May 1990, may normally be viewed as supplementing the Commentary.

More recent letters are important for another reason. The Commentary is based on the Fair Credit Reporting Act prior to its amendment by the Consumer Credit Reporting Reform Act of 1996.[2] The Commentary does not reflect the sometimes important changes in the language of the Act and the often extensive additions to the Act embodied in the 1996 "reforms." The letters often do. Beginning June 1997, the informal staff opinion letters address changes in the law and are especially useful for analysis of new FCRA provisions. These more recent letters are reproduced in this appendix and are available at www.ftc.gov.

---

1 *See* Introduction to the Supplementary Information published with the Commentary on May 4, 1990, *reprinted at* Appx. C, *supra*.

2 *See* § 1.4.6, *supra*.

*Informal FTC Letters*  **Appx. D Feb. 11, 1998**

February 11, 1998

Karen Coffey, Chief Counsel
Texas Automobile Dealers Assn.
1108 Lavaca—P.O. Box 1028
Austin, Texas 78767-1028

Re: Section 604 of the Fair Credit Reporting Act

Dear Ms. Coffey:

This responds to your letter dated August 29, 1997, asking the views of the Commission staff on a number of issues concerning application of the amended Fair Credit Reporting Act ("FCRA"), including (1) the propriety of an auto dealership obtaining a consumer report from a consumer reporting agency ("CRA") on an individual who visits the showroom, (2) the disclosure required to be provided to a job applicant or current employee before a consumer report may be obtained by the employer, and (3) the items required to be provided to the consumer before adverse action may be taken by the employer based on the report.

1. Section 604(a)(3)(F) permits CRAs to provide consumer reports to any party who has a "legitimate business need for the information in connection with a business transaction that is initiated by the consumer." You ask whether this provision allows a dealer to obtain a consumer report on a person who "comes to an automobile dealership and requests information" from a salesman about one or more automobiles. In our view it does not, because a request for general information about products and prices offered does not involve a business transaction initiated by the consumer.

More generally, you ask "when is the beginning of a business transaction" initiated by the consumer? In responding to this question, it is important to note that Section 604(a)(3)(F) limits this "business need" permissible purpose to transactions (i) that are "initiated" by the consumer and (ii) where the seller has a "legitimate business need" for the information. The staff's view is that an automobile dealer may obtain a report only in those circumstances in which the consumer clearly understands that he or she is initiating the purchase or lease of a vehicle *and* the seller has a legitimate business need for the consumer report information in order to complete the transaction.

For example, a consumer who asks a dealer questions about prices and financing is not necessarily indicating an intent to purchase or lease a vehicle from that particular dealer. Nor does the dealer have a "legitimate" business need for a consumer report in this situation. The consumer may simply be comparison shopping. In such a situation, the dealer must obtain written permission from the consumer before obtaining a consumer report. If the dealer would like to see a consumer's credit report before answering general questions about the availability of financing, this must be explained to the consumer and written permission must be obtained. In the same way, a request to "test drive" a vehicle does not indicate an intent to initiate the purchase or lease of the vehicle. Accordingly, if a consumer asks to test drive a vehicle, the dealer must obtain written permission from the consumer before obtaining a report.

Only in those circumstances where it is clear both to the consumer and to the dealer that the consumer is actually initiating the purchase or lease of a specific vehicle and, in addition, the dealer has a legitimate business need for consumer report information may the dealer obtain a report without written permission. In this regard, we note that obtaining information for negotiation purposes does not constitute a "legitimate" business need. The dealer must have a specific need for the information directly related to the completion of the transaction. For example, a dealer may obtain a report, if one is necessary, in order to arrange financing requested by the consumer.[1] The dealer may also obtain a report to check a consumer's creditworthiness when the consumer presents a personal check to pay for the vehicle. By contrast, a permissible purpose would not arise if a consumer intends to pay by cash.

2. Section 604(b)(2)(A) requires consumer report users, before procuring a report for employment purposes, to make a written disclosure to the consumer "in a document that consists solely of the disclosure" that a consumer report may be obtained for employment purposes. You ask whether a party that has secured an employee's authorization for the report in an employment application must also make the disclosure in a separate document. The answer is yes, because Section 604(b)(2)(A) specifically states that the document containing the required disclosure may not include other items.

You also ask what information may appear on the document and if "the FTC is suggesting that the document be of a certain size." It is our view that Congress intended that the disclosure not be encumbered with extraneous information. However, some additional information, such as a brief description of the nature of the consumer reports covered by the disclosure, may be included if the information does not confuse the consumer or detract from the mandated disclosure. We suggest no size requirement for the disclosure; a document that meets the "clear and conspicuous" standard set by the FCRA will be acceptable.

3. Finally, you ask two questions relating to Section 604(b)(3), which requires an employer "before taking any adverse action" based on a consumer report, to provide the consumer with a copy of the report and the summary of consumer FCRA rights prescribed by the Commission. *First*, you ask if a CRA is responsible for sending the required summary to employers. The answer is yes, because Section 604(b)(1)(B) imposes this duty on CRAs that provide reports for employment purposes. *Second*, you ask if there is any specific amount of time that must elapse from the time the required items are provided to the consumer and the employer's adverse employment action. The law is silent as to how long the employer must wait after making the Section 604(b)(3) pre-adverse action disclosure before actually taking adverse action; it states only that the specified items be provided *before* the adverse action is taken. Employers may wish to consult with their counsel in order to develop procedures that are appropriate, keeping in mind the clear purpose of the provision to allow consumers to discuss the report with employers before adverse action is taken.

The opinions set forth in this informal staff letter are not binding on the Commission.

Yours truly,

David Medine
Associate Director
Division of Credit Practices

---

1 The dealer's "permissible purpose" here is provided by Section 604(a)(3)(A), which permits the use of consumer reports in connection with a credit transaction involving the consumer.